DANIEL SHIRK v. FRANK M. SHERIDAN *et al.*

No. 504.   ( 62 Pac. 436.)

DISTRIBUTION OF FUNDS—*Attorneys' Fees*—*Priorities.* The order of the trial court, giving priority in payment to attorneys' fees over the claim of a pledgee of corporate stock out of funds arising from the sale of all of the property of a corporation, in an action for dissolution thereof, *held* to be sustained by the pleadings and the evidence.

Error from Miami district court; JOHN T. BURRIS, judge.   Opinion filed October 15, 1900.   Affirmed.

*Sheldon & Sheldon*, for plaintiff in error.

*Frank M. Sheridan*, for defendants in error.

The opinion of the court was delivered by

MILTON, J. : This controversy arose between Daniel Shirk, the plaintiff in error, who is the pledgee of thirty shares of corporate stock, and the law firm of Frank M. Sheridan and John C. Sheridan (since deceased), in the district court of Miami county, in an action brought by C. A. Dorsey and Frank M. Gaylord against the Paola Variety Store Company, a corporation, A. C. Stich, W. E. Stich, and Gussie Stich, for the appointment of a receiver and the winding up of the affairs of the store company.

A receiver was appointed, and with remarkable celerity he disposed of the property of the corporation, paid its debts, and duly reported his action as receiver to the district court, and the report was, on the application of all the parties, approved—all within about six weeks from the date of the appointment of the receiver.   At the date of such approval the entire stock of the corporation was held as follows : Dorsey, fifteen shares ; Gaylord, ten shares,

and A. C. Stich, seventy-five shares. A balance of about $3700 remained in the hands of the receiver, sufficient to pay about thirty-one dollars upon each share. The court ordered the receiver to pay at this rate to A. C. Stich upon his seventy-five shares of stock and to turn over the balance to the clerk of the court, to be paid out to the other two stock-holders or their assigns, as might subsequently be ordered. Prior to this, Sheridan & Sheridan had served upon the defendants in the action notice of their claim of an attorney's lien upon all moneys due or to become due to the plaintiffs, Dorsey and Gaylord, in the action, and on the next day after the confirmation of the receiver's report Daniel Shirk appeared in the action as an interpleader to contest the said claim. Two other parties claiming to be pledgees of the stock owned by Dorsey also appeared, by motion for the same purpose. Thereupon Sheridan & Sheridan filed a formal motion asking the court to order its clerk to pay from the funds in his hands the attorneys' fee as stated.

The motion alleged that the services were reasonably worth the amount claimed; that they were performed at the request of Dorsey and Gaylord, but with the knowledge and approval of Shirk and the other pledgees, and that such approval continued throughout the litigation, and that Shirk and the other pledgees "are claiming the benefits arising out of and from the professional services aforesaid of these movers, on said fund." The motion also set forth in detail the nature of such services and what was accomplished thereby, and averred the insolvency of Dorsey and Gaylord. Thereupon Daniel Shirk withdrew his interplea and filed a motion containing substantially all the allegations of the interplea, and

asking the court to order the clerk to pay over to him, Shirk, the entire distributive share appertaining to the Gaylord stock—that is, the sum of $930. The issues thus arising were all tried together upon affidavits of several persons and the oral testimony of John C. Sheridan.

The testimony on behalf of Sheridan & Sheridan tended to prove the averments of their motion, while the affidavit of Daniel Shirk tended to prove that he had not authorized Gaylord or Dorsey to bring any action for him or for his benefit, or directly or indirectly to employ any counsel for him in the present action, or to create any lien on the said stock as against the interest of the said Shirk, and that he did not advise the bringing of the action. One of the other pledgees testified by affidavit to the same effect, while he expressly admitted having known prior to the commencement of the action that it was to be brought, and also admitted the writing of a letter prior to its commencement to Dorsey, in which he stated, "From all I can learn, the thing for you to do is to proceed as you stated you intended to," meaning to proceed to institute the action, as was afterward done. The other pledgees made no real defense as against the motion of the attorneys, and none of the pledgees denied previous concurrent knowledge respecting the bringing and prosecution of the action, or of the engagement or services therein of Sheridan & Sheridan. The court found, upon what appears to have been the preponderance of the evidence, that all the allegations contained in the motion of Sheridan & Sheridan were true; that Dorsey and Gaylord had no available money or property with which to pay the attorneys for their services except

the funds in the hands of the clerk of the court, and accordingly sustained that motion and ordered the clerk to pay to the attorneys out of the fund in the clerk's hands the sum of $350, and that Daniel Shirk and the other two pledgees pay the costs accruing by .reason of the motion. Each of the pledgees thereupon filed a motion for a new trial, and, the same being overruled, requested and was granted time to make and serve a case-made for review and decision in this court. Subsequently the other two pledgees withdrew their exceptions to the ruling and judgment of the court, and Shirk alone brought these proceedings. Counsel for plaintiff in error contend that the court erred in the admission of certain testimony offered by Sheridan & Sheridan. The alleged error cannot be considered, for the reason that no objection or exception to the admission of this testimony appears in the record.

Counsel also contend that the testimony of John C. Sheridan, on behalf of the law firm, shows that they were attorneys for Dorsey and Gaylord only, and that neither Shirk nor the other pledgees of the stock at any time talked with the attorneys about employing them. Counsel argue from this that such attorneys had no claim against Shirk or his property, or interest in property belonging to him, growing out of employment and services in the case. On the other hand, counsel representing the interests of the late firm of Sheridan & Sheridan state their position as follows :

"The defendants in error, Sheridan & Sheridan, contend that Shirk cannot, after receiving, knowingly and approvingly, beforehand, during the rendition of their services, and afterward, the benefits and value of their services, take the fruits of their effort, after

advising its performance, knowing it would be wholly to his benefit, and then shirk the payment of the reasonable value of such services.''

The general finding of the trial court upon the issue of fact presented is equivalent to special findings to the effect that the plaintiff in error knew before the action was instituted that it was to be brought, and that he had, with full knowledge of the commencement and pendency of the action of Dorsey and Gaylord, in all respects indorsed and ratified the commencement and prosecution of the same, well knowing that Sheridan & Sheridan were the attorneys therein, and that he knowingly claimed the benefit of their services in said action. In fact, his request for an order upon the clerk to pay over the funds is itself evidence of a claim to the fruits of the services rendered by the attorney. Shirk would certainly not have been bound by the conduct of Gaylord in respect to the suit for the dissolution of the corporation by any engagement of counsel made therein by Gaylord but for the foregoing facts. This case is in principle like that of *Davis v. Gemmell et al.*, 73 Md. 530, 21 Atl. 712, in which two of the three stockholders of a corporation sought to defeat the claim of the attorneys for a fee for having procured a judgment which became an asset of the corporation in an action instituted in the name of the majority stockholder, to whom the attorneys supposed the claim sued upon belonged. Bryden was the minority stockholder, and Gemmell and Sinclair the majority stockholders. The court said :

''But for the labors of these counsel no fund would be in court as the result of that litigation. They acted in the most absolute good faith throughout the whole controversy. It is palpably inequitable, after the la-

bor has been performed and the result has been achieved, that Gemmell and Sinclair should be allowed to absorb that portion of the fund which, under Bryden's contract with his counsel, justly and honestly belongs to the latter. Gemmell and Sinclair stood by and saw the work done; they neither interfered nor objected; and they cannot now be heard in a court of equity to except to that work being paid for out of the fund realized by the labor of these gentlemen, especially when they themselves, these exceptants, are seeking the benefit of that very work and labor."

We hold that the trial court was clearly right in allowing the attorneys' fee as a preferred claim out of the fund in the hands of the clerk. The order and judgment of the district court are affirmed.